IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 14-cr-428 |
| | ) |
| | ) |
| ANDRE DWIGHT WILLIAMS | ) |

## MEMORANDUM OPINION

Defendant Andre Dwight Williams pled guilty to engaging in conspiracy to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and, on May 8, 2015, was sentenced to 168-months imprisonment for that crime. At sentencing, defendant qualified as a "career offender" pursuant to U.S.S.G. § 4B1.1(b), increasing his offense level by six and increasing his criminal history category to VI, resulting in a guideline range of 262 to 327 months. But in the end, defendant received a sentence of 168-months, a sentence well below the then-applicable guideline range.

At issue now is defendant's motion, by counsel, for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Specifically, defendant argues that he is entitled to compassionate release on the grounds that:

i. the COVID-19 pandemic combined with his obesity and high blood pressure might lead defendant to suffer more serious health consequences were he to contract COVID-19; and

ii. although defendant was correctly sentenced as a "career offender" in 2015, a change in the law would not result in a much lower guideline range and, thus, his 168-month sentence is well above the guideline range that apply were defendant to be sentenced today and creates an unwarranted sentencing disparity.

This matter has been fully briefed and is now ripe for disposition. Oral argument is dispensed with as the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid the decisional process.

1

I.

The operative facts of this case are drawn from the Presentence Investigation Report ("PSR") and other records in the docket of this case.

From 2010 to 2014, defendant conspired with others to distribute more than one kilogram of heroin. Defendant's customers traveled from Culpepper and Orange Counties in the Western District of Virginia to meet defendant in the Eastern District of Virginia where they purchased heroin from him.

On December 18, 2014, a federal grand jury charged defendant in a one-count indictment with conspiracy to distribute one kilogram or more of heroin. On February 6, 2015, defendant pled guilty to the Indictment. Notably, defendant's conviction in this case was defendant's third conviction for distribution of heroin. Defendant's guideline offense level was 34, because defendant qualified, under then-existing law, as a "career offender" pursuant to the application of USSG § 4B1.1 based on his conviction of a "controlled substance offense" where defendant had at least two prior controlled substance offenses. Additionally, defendant had a criminal history score of eight, which would have resulted in a Criminal History Category IV, but because defendant was a "career offender" his criminal history category was appropriately increased to Category VI. Thus, at sentencing, defendant's guideline range was 262 to 327 months based on an offense level of 34 and a Criminal History Category VI. Yet, on May 8, 2015, defendant was sentenced to 168 months of imprisonment, a sentence well-below the advisory guidelines range.

On February 26, 2021, defendant filed his motion for compassionate release arguing that there are extraordinary and compelling circumstances warranting defendant's release. Defendant argues that he suffers from obesity and hypertension and that those medical conditions put him at risk for more severe health consequences if defendant contracts COVID-19. *See* Mot. at 5.

Defendant notes that his body mass index ("BMI") is 48-49, which is the highest class of obesity. *See id.* at 7. Defendant's blood pressure is also high, measuring at 148/85. *See id.* at 9. Defendant argues that both conditions are identified by the Center for Disease Control as specific risk factors for severe complications from COVID-19. *See id.* at 12. Defendant next argues that defendant would be subject to a lower guideline range if sentenced today pursuant to the Fourth Circuit's decision in *Norman*, because a drug conspiracy conviction would not qualify defendant as a "career offender." Mot. at 16. Defendant argues that his guideline range increased from 100-125 months to 262-327 months based on the application of "career offender" status and that this discrepancy provides a separate extraordinary and compelling circumstance warranting compassionate release. *See id.* at 17.

On March 16, 2021, the government filed its opposition to the motion, arguing that defendant has not presented extraordinary and compelling circumstances warranting compassionate release. The government concedes that defendant has exhausted his administrative remedies. The government notes that the Bureau of Prisons ("BOP") has taken steps to mitigate the risks of COVID-19. The government also notes that, at FCI Petersburg Low, defendant will have access to the COVID-19 vaccine. The government asserts that defendant has not shown a particularized risk of contracting COVID-19 at his facility. The government further asserts that the COVID-19 pandemic alone is not a sufficient basis for compassionate release. The government also argues that § 3553(a) factors do not warrant granting defendant's motion.

With respect to the application of the *Norman* decision, the government argues that defendant's *Norman* argument fails for three reasons: (i) that the nonretroactive change in sentencing law in *Norman* is not an extraordinary and compelling circumstance; (ii) that defendant did not suffer a gross sentencing disparity; and (iii) defendant's argument is more appropriate for

a motion pursuant 28 U.S.C. § 2255. By contrast, defendant argues that the Fourth Circuit has instructed district courts to apply *Norman* when resentencing a defendant pursuant to the First Step Act. Defendant also argues that in *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) the Fourth Circuit held that the district court should have applied a nonretroactive change in the law when considering a defendant's motion for compassionate release.

## II.

As a preliminary matter, the parties agree that defendant has fully exhausted his administrative remedies, and therefore that defendant's motion for compassionate release is now ripe for disposition. The legal standard for evaluating such motions is well settled. Simply put, a defendant seeking a sentence reduction under § 3582(c)(1)(A) bears the burden of establishing (1) that there are "extraordinary and compelling circumstances" warranting a sentence reduction and (2) that analysis of the § 3553(a) factors counsels that a sentence reduction is appropriate as a matter of judicial discretion. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Sprague*, 838 F. App'x 775, 775–76 (4th Cir. 2021); *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021).

### A.

Defendant first argues that he is entitled to compassionate release based on the COVID-19 pandemic. But, as the Third Circuit sensibly recognized "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 954, 597 (3rd Cir. 2020). Thus, district courts within the Eastern District of Virginia have generally examined whether a defendant has "both a particularized susceptibility to the disease and a particularized risk of contracting the

disease at his prison facility." *United States v. White*, No. 2:07-cr-150, 2020 WL 1906845, at *1 n.2 (E.D. Va. Apr. 17, 2020).[1]

Defendant argues that he faces a particularized susceptibility to greater heath consequences as a result of his obesity and hypertension. First, defendant asserts that he has a BMI of 48, which puts him in a class of people who are obese and thus at an increased risk of severe health consequences if he contracts COVID-19.[2] The CDC recognizes that approximately 42 percent of adult Americans are obese.[3] Given this, courts have sensibly rejected motions for compassionate release where obesity was a defendant's principal risk factor.[4] Indeed, as one district court recognized, "[a]ssuming federal prisoners experience [obesity and severe obesity] at about the same rate as the general population, if either one qualified as an extraordinary and compelling reason, roughly half of the prison population would be eligible for compassionate release." *United States v. Hayes*, 2020 WL 3611485, at *2-3 (M.D. Fla. July 2, 2020). Similarly, courts have recognized that hypertension, another common ailment, does not establish extraordinary and

---

[1] *See also United States v. Feiling*, No. 3:19-cr-112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020).

[2] *See* CDC, *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited on December 6, 2021).

[3] *See* CDC, *Adult Obesity Facts*, available at https://www.cdc.gov/obesity/data/adult.html (last visited on December 6, 2021).

[4] *See, e.g., United States v. Price*, 2020 WL 5440164 (E.D. Mich. Sept. 10, 2020) ("[T]his Court has declined to order the release of otherwise healthy and relatively young inmates with obesity as their only cognizable risk factor…"); *United States v. Tranter*, 2020 WL 3841268, at *2-5 (N.D. Ind. July 8, 2020)(denying compassionate release to 36 year old former smoker with BMI of 33.1); *United States v. Pride*, 2020 WL 3971652 (D. Colo. July 14, 2020) (denying compassionate release to 37 year old with hypertension and BMI of 40.4); *United States v. Abalos*, 2020 WL 5167537 (D. Haw. Aug. 31, 2020) (denying compassionate release to 41 year old with hypertension and BMI of 31); *United States v. Hayes*, 2020 WL 3611485, at *2-3 (M.D. Fla. July 2, 2020) (denying compassionate release to defendant with high blood pressure and a BMI greater than 40, but not identifying defendant's age); *United States v. Peaks*, 2020 WL 2214231 (E.D. Mich. May 7, 2020) (denying compassionate release to 31 year old with hypertension and BMI "a little over 44"); *United States v. Smith*, 2020 WL 4791226 (E.D. Mich. Aug. 18, 2020) (denying compassionate release to 30 year old with asthma and BMI of 30.7); *United States v. Myers*, 2020 WL 4934343 (E.D. Mich. Aug. 24, 2020) (denying compassionate release to 40 year old with high blood pressure and BMI of 31.5).

compelling circumstances warranting compassionate release. *See United States v. Gray,* 14 CR 810-10(CM), 2020 WL 3050730, at *3 (S.D.N.Y. June 8, 2020) (concluding COVID-19 did not present extraordinary and compelling circumstances in light of 53-year-old defendant's medical conditions of hypertension and diabetes).[5] Accordingly, defendant's obesity and his hypertension fall short of constituting extraordinary and compelling reasons warranting compassionate release under § 3582.

Nor can defendant establish that there is a particularized risk of contracting COVID-19 at his current facility of confinement. This is because there are currently no inmates testing positive for COVID-19 at FCI Petersburg Low and only three staff members have tested positive for COVID-19.[6] Moreover, as the government notes, the COVID-19 vaccine is available at FCI Petersburg Low. *See United States v. Smith*, No. 17-cr-20753, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021); *see also United States v. Jackson*, No. 3:11-cr-138, 2021 WL 1721427, at *2 (M.D. Tenn. Apr. 30, 2021) ("[V]irtually every district court considering the issue [] has determined that being fully vaccinated . . . precludes a finding of an 'extraordinary and compelling' reason within the meaning of Section 3582(c)(1)(A)"). Accordingly, simply put, defendant cannot establish a particularized risk of contracting COVID-19 at FCI Petersburg Low.

---

[5] *See United States v. Cox*, No. 13-CR-20779-02, 2020 WL 4581692, at *1 (E.D. Mich. Aug. 10, 2020) (explaining that a diagnosis of hypertension does not constitute extraordinary and compelling reasons and noting that "hypertension is a common medical condition shared by over 100 million Americans."); *United States v. Hall*, 2020 WL 4582712, at *2 (D. Md. Aug. 10, 2020) (explaining that the defendant's hypertension diagnosis does "not sufficiently differentiate him form the thousands of similarly situated incarcerated individuals to constitute extraordinary and compelling reasons.");*United States v. Chambers*, No. 18-47 2020 WL 4260445, at *4 (E.D. La. July 24, 2020) (denying motion for compassionate release for 51-year-old male defendant with hypertension and other alleged medical conditions, explaining that "courts have found that hypertension does not amount to an extraordinary or compelling reason for release" during the COVID-19 pandemic) (collecting cases); *United States v. Jordan*, No. 09-CR-20490, 2020 WL 4016087, at *2 (E.D. Mich. July 16, 2020) (noting that "the CDC believes that hypertension 'might be' a COVID-19 risk factor, but this determination is still uncertain").

[6] *See* BOP, *COVID-19 Coronavirus: COVID-19 Cases*, available at https://www.bop.gov/coronavirus/index.jsp (last visited December 6, 2021).

6

In sum, defendant has not established the requisite extraordinary and compelling circumstances warranting compassionate release under § 3582 based on COVID-19 and his medical conditions. This conclusion, however, does not end the analysis of defendant's § 3582 motion.

**B.**

Defendant next argues that his sentence should be reduced because under current law, in contrast to the law applicable at sentencing, defendant would not qualify as a "career offender." *See United States v. Norman*, 935 F.3d 232 (4th Cir. 2019). Analysis therefore properly begins with noting this fact – that under current law defendant's applicable guideline range would be far lower than the guideline range that applied at sentencing because, pursuant to *Norman*, defendant would not be subject to a "career offender" enhancement. That "career offender" designation resulted defendant receiving in a six-level enhancement and a criminal history category of VI, which increased defendant's guideline range from 100 to 125 months to 262 to 327 months.

In *Norman*, the Fourth Circuit considered whether a conviction for conspiracy to possess a controlled substance with intent to distribute, in violation of 21 U.S.C. § 846, qualifies as a "controlled substance offense" under U.S.S.G. § 4B1.2. The Fourth Circuit employed a categorical approach in determining that such a conviction is not a "controlled substance offense" because a conspiracy under § 846 does not require an overt act and thus "criminalizes a broader range of conduct than that covered by generic conspiracy" referred to in § 4B1.2. *Norman*, 935 F.3d at 238. Defendant was convicted of conspiracy to distribute one kilogram or more of heroin, in violation of § 846. Thus, if defendant was sentenced today, defendant would not qualify as a "career offender" and his sentencing guidelines would be 100 to 125 months. But significantly, the Fourth Circuit has not held that *Norman* applies retroactively. The

question thus becomes whether under § 3582 and Fourth Circuit law district courts may apply *Norman* retroactively and provide the relief defendant seeks.

The answer to this question is that, applying the Fourth Circuit's decision in *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), district courts may consider and apply *Norman* retroactively when considering a motion pursuant to § 3582. In *McCoy*, the Fourth Circuit considered whether a district court could consider a nonretroactive change to the "stacking" of § 924(c) sentences in the First Step Act when deciding a motion under § 3582. *Id.* at 285. The Fourth Circuit held that a district court had discretion to do so. *Id.* In so holding, the Fourth Circuit explained that district courts may "permissibly treat[] as 'extraordinary and compelling reasons' for compassionate release" the severity of a defendant's sentence and the extent of the disparity between the defendant's sentence and those provided for under the First Step Act. *McCoy*, 981 F.3d at 286. The Fourth Circuit further rejected the government's argument that in doing so district courts were impermissibly giving retroactive effect to a statutory provision that Congress had not made retroactive. *Id.* at 287. Indeed, the Fourth Circuit expressly held that "[t]he fact that Congress chose not to make [a section] of the First Step Act retroactive does not mean that courts may not consider that legislative change in conducting their individualized review of motions for compassionate release." *Id.*

The Fourth Circuit's analysis in *McCoy*, when applied to the facts presented here, compels the conclusion that district courts are permitted to consider *Norman* when determining whether extraordinary and compelling reasons exist to reduce a defendant's sentence pursuant to § 3582. Like the stacking provisions at issue in *McCoy*, the change in the law reflected in the *Norman* decision creates the possibility of vast sentencing disparities between those sentenced pre- and post-*Norman*. Indeed, the difference in the guideline range applicable here – 100 to 125

months versus 262 to 327 – is more than ten years. In its briefing, the government appears to accept implicitly that district courts have discretion to consider *Norman*, as the government argues only that *Norman* <u>does not</u> constitute extraordinary and compelling reasons for a sentence reduction but does not argue that *Norman* <u>cannot</u> constitute extraordinary and compelling reasons for a sentence reduction. *See* Govt. Supp. Mem. (Dkt. 69).

The conclusion that district courts are permitted to consider *Norman* and to apply that decision retroactively is further supported by the Fourth Circuit's decision in *United States v. Lancaster*, 997 F.3d 171 (4th Cir. 2021), which held that a district court, resentencing a defendant under the First Step Act, was required to recalculate the applicable guideline range based on *Norman*. In *Lancaster*, the Fourth Circuit held that the failure to recalculate the guidelines "might now prove to be material" because the district court, in calculating the original guideline range, "relied on the fact that Lancaster was a career offender." 997 F.3d at 176. The Fourth Circuit explained that, "since that time, changes in law indicate that Lancaster cannot now be sentenced as a career offender" and that the district court was required to take that into account and recalculate the applicable guideline range. *Id.* Thus, the Fourth Circuit's decision in *Lancaster* compels the conclusion that a defendant may benefit from the *Norman* decision on a motion for compassionate release, even though the *Norman* decision itself is not retroactive.[7]

---

[7] Other district courts within this Circuit have reached this precise conclusion, namely that courts have discretion to consider *Norman* in deciding motions for compassionate release pursuant to § 3582(c)(1)(A). *See United States v. Trice*, No. 7:13-cr-34, 2021 WL 402462 at *3 (W.D. Va. Feb. 3, 2021) (finding extraordinary and compelling reasons warranting compassionate release where the defendant "would no longer qualify as a career offender" and "would likely receive a dramatically lower sentence than the one he is currently serving"); *United States v. Spencer*, 521 F. Supp. 3d 606, 610 (E.D. Va. 2021) (holding that a "[d]efendant may raise this [*Norman*] argument in a motion for compassionate release," but denying compassionate release after considering *Norman* based on the 18 U.S.C. § 3553(a) factors).

Although the government cites *United States v. Brice*, No. 07-cr-0261, 2021 WL 1926713 (D. Md. May 13, 2021), as precluding the application of *Norman*, that case did not squarely address the Fourth Circuit's decision in *McCoy* and whether *McCoy* permits district courts to exercise discretion to find extraordinary and compelling reasons based on *Norman*.

The government argues unpersuasively that the disparity between the sentencing guidelines applicable pre- and post-*Norman* cannot constitute extraordinary and compelling reasons for a sentence reduction under § 3582. Indeed, the government's argument in this regard appear to be that *McCoy* and *Norman* were wrongly decided. That argument can only be addressed to the Supreme Court, not this Court.[8]

The government also unpersuasively argues that defendant's *Norman* argument should be construed as a successive § 2255 motion. The government correctly notes that courts have rejected attempts to disguise collateral attacks on sentences as motions for compassionate release. *See* Govt. Supp. Mem. at 11 (collecting cases). As defendant points out, however, the Fourth Circuit has held that application of a "career offender" designation "does not present a claim that is cognizable on collateral review." *United States v. Foote*, 784 F.3d 931, 932 (4th Cir. 2015). In *Foote*, the Fourth Circuit recognized that "not every alleged sentencing error can be corrected on collateral review" and, applying the Supreme Court's decision in *Davis v. United States*, 417 U.S. 333 (1974), held that "sentencing a defendant pursuant to advisory Guidelines based on a career offender status later invalidated" did not meet the "remarkably high bar" that has been set for habeas petitions. 784 F.3d at 936. The Fourth Circuit expressed frustration that it was compelled to reach this result, explicitly noting: "Our decision today does not come without frustration. Appellant challenged his career offender designation at every step . . . and his career offender designation increased dramatically his advisory Guideline range. But we believe the guidance of the Supreme Court and Congress is clear and, in this case, ties our hands." *Id.* at 944.

---

[8] In this regard, the government cites the Eleventh Circuit's decision in *United States v. Bryant*, 996 F.3d 1243 (11th Cir. 2021), which conflicts with *McCoy*, and the Second Circuit's decision in *United States v. Tabb*, 949 F.3d 81, 88 (2d Cir. 2020), which conflicts with *Norman*.

Because defendant cannot obtain habeas relief pursuant to § 2255, the retroactive application of *Norman* fits within the category of extraordinary and compelling circumstances that the Fourth Circuit held that § 3582 was meant to capture in *McCoy*. *See McCoy*, 981 F.3d at 287 (holding that § 3582(c) was intended to "capture the truly exceptional cases that fall within no other statutory category"); *see also Spencer*, 521 F. Supp. 3d at 610; *Harris v. United States*, No. , 2021 WL 2402312, at *8 & n.8 (D.S.C. June 11, 2021) (denying habeas relief based on the application of the "career offender" enhancement but noting that defendant may be entitled to compassionate relief pursuant to 18 U.S.C. § 3582(c)(1)(A)). Thus, under *McCoy* and *Foote*, defendants who, following *Norman*, no longer qualify as "career offenders" may suffer from the kind of sentencing disparity that the compassionate release statute was intended to capture – namely a disparity for which no other relief is available.

Given that the *Norman* decision may establish extraordinary and compelling reasons warranting a sentence reduction in certain circumstances, the next step in the analysis is whether such extraordinary and compelling reasons in *this* case and, if so, what sentence reduction, if any, should defendant receive. The first question must be answered affirmatively. Under *Norman*, defendant's guideline range would have been 100 to 125 months, significantly lower than the 262 to 327 months that applied at sentencing. Although defendant received a variance sentence of 168 months, that sentence is still more than three years longer than the high end of the guidelines that would have applied under *Norman*. Under *McCoy*, this disparity constitutes extraordinary and compelling circumstances warranting consideration of a sentence reduction. *See McCoy*, 981 F.3d at 286 (holding that district courts may "permissibly treat[] as 'extraordinary and compelling reasons' for compassionate release" a disparity in the defendant's

sentence).[9] Other courts have considered the exact same disparity in the guideline range applying post-*Norman*, and also have concluded that the disparity constitutes extraordinary and compelling circumstances. *See Trice*, 2021 WL 402462, at *3 ("Therefore, as Trice argues, were his sentencing to take place today, he would no longer qualify as a career offender . . . resulting in a guideline range of imprisonment of 100 to 125 months" reduced from 262 to 327 months). Accordingly, defendant has established extraordinary and compelling circumstances warranting compassionate release.

Although defendant has established extraordinary and compelling circumstances to warrant a sentence reduction, the extent of that reduction remains to be determined. Defendant seeks a reduction to a sentence of time served. This is not appropriate. As defendant recognizes, defendant was subject to a ten-year mandatory minimum and defendant has served approximately 85 months of his 168-month sentence, still well below the guideline range of 100-125 months that would apply under *Norman*. A reduced sentence of 125 months at the upper end of the guideline range applicable under *Norman* satisfies the § 3553(a) factors and is a sentence that is sufficient but not greater than necessary given the facts and procedural history of this case. Defendant committed a serious crime – conspiracy to distribute heroin. Moreover, a within guidelines sentence avoids unwarranted sentencing disparities. Such a sentence is also sufficient to serve the goals of deterrence, protecting the public, promoting respect for the law, and providing just punishment. Additionally, district courts, including some cited by defendant, have

---

[9] District courts have found extraordinary and compelling circumstances warranting a sentence reduction exist even when the sentencing disparity is not as extreme as in the *McCoy* case. As the district court noted in *United States v. Brown*, 3:15-cr-17, 2021 WL 2389881 (W.D. Va. June 11, 2021): "Neither the original guideline range nor the post-*Norman* guideline range approaches a sentence of 'sheer and unusual length' comparable to the ones that the Fourth Circuit considered in *McCoy*. However, the difference between [the] sentence [imposed] and the sentence he would have received post-*Norman* is still substantial. . . . While not as dramatic as the decades-long differences the Fourth Circuit considered in *McCoy*, the Court finds a 'gross disparity' in the sentences here." *Id.* at *10 (reducing defendant's sentence but denying the defendant's request for immediate release from custody)

reduced a defendant's sentence to the top of the guideline range that would have applied had the sentencing occurred post-*Norman*.[10] Thus, defendant's motion will be granted in part and denied in part. The motion will be granted insofar as defendant's sentence will be reduced from 168 months imprisonment to 125 months imprisonment. The motion will be denied in all other respects.

An appropriate order will issue separately.

The Clerk of Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, VA
December 8, 2021

/s/
T. S. Ellis, III
United States District Judge

---

[10] *See, e.g., United States v. Brown*, 2021 WL 2389881 (W.D. Va. June 11, 2021) (reducing the defendant's sentence, though not granting immediate release, finding that "the disparity in length of sentence [defendant] would face today post *Norman* is an extraordinary and compelling reason for relief"). In other cases, this Court has reduced a defendant's sentence pursuant to *McCoy* and the compassionate release statute without releasing the defendant. *See United States v. Stoddard*, No. 14-cr-76, 2021 WL 2379568 (E.D. Va. June 9, 2021) (reducing defendant's sentence to life pursuant to motion for compassionate release, when defendant was sentenced to life plus 75 years). Defendant also notes several other out of Circuit decisions where courts reduced a defendant's sentence on compassionate release but did not grant immediate release. *See United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) (noting that courts can "reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place."); *United States v. Rodriguez*, 2020 WL 5810161, at *6-8 (S.D.N.Y. Sept. 30, 2020).